## UNITED STATES v. BROGREN et al.

Criminal Nos. 16979, 16826, 16774, 16899, 16902, 16924, 16925, 16729, 16740, 16934, 16941.

District Court, D. Massachusetts.

Nov. 13, 1945.

Edmund J. Brandon, U. S. Atty., and Joseph M. Hargedon, Asst. U. S. Atty., both of Boston, Mass., for the Government.

H. C. Thompson, of Boston, Mass., for defendants Brogren, Bryson, Mannos, McDevitt, Russo, Snow, and Welch.

Abraham Keller, of Dorchester, Mass., for defendant Harkins.

L. J. O'Malley, of Boston, Mass., for defendants Rowe and Smith.

HEALEY, District Judge.

The defendants McDevitt, Welch and the others, have been indicted for the substantive offense of causing to be made and presented for payment and approval, to an officer in the naval service of the United States, claims upon and against the Navy Department of the United States of America, which claims the defendants knew to be false, fictitious and fraudulent.

The defendants have all filed demurrers to the respective indictments against them, all based on the same grounds.

The indictments make substantially the following allegations:

That the Bethlehem-Hingham Shipyard, Inc., hereinafter referred to as the Shipyard, was a corporation engaged at Hingham, Massachusetts, in the manufacture and construction of ships for the United States Navy Department, pursuant to contracts entered into between the Navy De-

partment and the Shipyard for the construction of naval vessels. By the terms of each contract, the Shipyard was to be reimbursed by the United States of America in the payment of the total true cost in performance of the contract, which cost included work done in connection with the performance of the contract by employees of the Shipyard who were engaged in the manufacture and construction of the ships.

That the defendants were employed as welders and counters engaged in the construction of the ships.

That on or about certain dates specified in the various indictments, the defendants did unlawfully, knowingly, and wilfully cause to be made and presented for payment and approval, to an officer in the naval service of the United States having authority to approve such claims, claims upon and against the Navy Department of the United States of America, which claims the defendants knew to be false, fictitious and fraudulent in that they caused the Shipyard to make and present, on the dates specified, for approval and payment to the Supervisor of Shipbuilding, United States Navy, Bethlehem Steel Company, Massachusetts, claims against the Navy Department of the United States which were false, fraudulent and fictitious, in that they included, in the payroll charges for which reimbursement was claimed therein as part of the cost of work done in connection with the performance of the contract, certain sums paid to certain welders, to which said welders were not entitled.

That these false claims were made, in the case of each welder, by fraudulently reporting to the counters, assigned by the Shipyard to count and measure the daily output of work performed by each welder, a fictitious amount and kind of welding not actually performed by him, and by signing and certifying to the Shipyard as true and correct certain daily piecework tally slips containing entries thereon which were false and fraudulent as to the amount and kind of welding performed by him, which resulted in the welder being given credit by the Shipyard, under its work incentive plan, for certain bonus hours of work which he had not in fact earned, and for which he received certain wage payments to which he was not in fact entitled.

That in the case of each counter, these claims were alleged to have been made, by knowingly and wilfully making out, signing, and certifying as true and correct certain daily piecework tally sheets for various welders whose work he was assigned to count and measure, which tally sheets were false and fraudulent in that they set forth therein welding work which was in excess of the amount actually performed by the welders, as a result of which the welders were given credit by the Shipyard for bonus hours to which they were not entitled, and for which the welders received certain wage payments for each bonus hour, to which payments they were not entitled.

The indictments then allege that each of the defendants well knew that the Shipyard was entitled to reimbursement by the Navy Department of the United States, and that the Shipyard would use the aforesaid daily piecework tally slips and tally sheets as a basis of computing the cost of work done by it, in performance of the contract, for which it was entitled to be reimbursed by the Navy Department.

Each of the defendants has demurred to the respective indictments on the grounds:

1. That no reference is made to any statute of the United States of America under which the indictment is alleged to have been brought.

2. That no crime against the United States is set forth in the indictment.

3. That the statute under which the indictment is brought is unconstitutional in that it contravenes the Tenth Amendment to the Constitution of the United States of America, because it purports to exercise the police power which is reversed to the several states of the Union.

The defendant Welch demurs also on the further ground that there is a misnomer in the indictment against him, in that he is named therein as "John W. Welch alias John Woolie Welch," whereas his true name is "John Willie Welch."

Section 35(A) of the Criminal Code, as amended, 18 U.S.C.A. § 80, provides:

"Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the * * * naval service of the United States, or any department thereof, * * * any claim upon or against the Government of the United States, or any department or officer thereof, * * * knowing such claim to be false, fictitious, or fraudulent * * * shall be" guilty of an offense.

 It would appear then that the wording of the indictments follows the language

of this statute, and sufficiently states when, where, and by whom the offense charged was committed.

"In order to determine whether an indictment charges an offense against the United States, designation by the pleader of the statute under which he purported to lay the charge is immaterial." United States v. Hutcheson, 312 U.S. 219, at page 229, 61 S.Ct. 463, at page 464, 85 L.Ed. 788.

"There is no requirement that an indictment shall show upon what statute it is based." Bugg v. United States, 8 Cir., 140 F.2d 848, at page 851.

On this point, see also: Williams v. United States, 168 U.S. 382, at page 389, 18 S.Ct. 92, 42 L.Ed. 509; Hammer v. United States, 271 U.S. 620, at page 625, 46 S. Ct. 603, 70 L.Ed. 1118; Hewitt v. United States, 8 Cir., 110 F.2d 1, at page 6; United States v. Wood, D.C., 168 F. 438; United States v. Boasberg, D.C., 283 F. 305; Maresca et al. v. United States, 2 Cir., 277 F. 727.

The above cases clearly show that this point raised by defendants' demurrers is without merit.

█ The further point argued in support of the first ground of the demurrer is that the indictment contains no reference to the violation of any statute, or any allegation that the acts charged were contrary to the peace and dignity of the United States and that this constitutes not a mere defect of form, but one of substance prejudicial to the defendants. The answer to this argument is to be found in the case of Frisbie v. United States, 157 U.S. 160, on page 168, 15 S.Ct. 586, on page 589, 39 L.Ed. 657, where the court states:

"So far as respects the objection that the count does not conclude that the offense charged was 'contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the United States,' it is sufficient to state that such allegation, which is one of a mere conclusion of law, is not of the substance of the charge, and the omission is of a matter of form, which does not tend to the prejudice of the defendant, and is, therefore, within the rule of section 1025 Rev.St.,* to be disregarded."

█ In the defendants' brief supporting the second ground of demurrer, namely, that no crime against the United States is set forth in the indictments, it is contended that the statute, 18 U.S.C.A. § 80, does not include within its scope the defrauding of a private corporation in which the United States is not a stockholder, but with which the United States has entered into a contract for the construction of warships on a "cost plus" basis.

However, a reading of the indictments makes it clear that such is not the basis of the government's charges. These indictments are based on that part of the statute, 18 U.S.C.A. § 80, which makes it a crime to cause to be presented for payment or approval to or by an officer in the naval service of the United States or any department thereof any false, fraudulent or fictitious claim upon or against the Government of the United States, knowing such claim to be false, fictitious or fraudulent. As such they sufficiently set forth a crime against the United States. They do not allege any fraud perpetrated on the Shipyard as a private corporation under contract with the United States or as an agency of the United States, or as a corporation in which the United States is a stockholder; therefore, the question of whether or not such frauds come within the purview of this statute is immaterial to a consideration of these demurrers, and it is unnecessary to discuss the cases cited by the defendants in regard to this point.

The defendants' third point attacks the constitutionality of the statute under which these indictments are brought Their argument is based on the assumption that fraud against a private corporation whose only connection with the United States is contractual is fraud which concerns only the state in which it is committed and does not concern the United States; and that if a United States statute attempts to reach such a fraud, then that statute is unconstitutional.

Since I have found that these indictments are based only on that part of the statute which makes it a crime to cause false, fraudulent and fictitious claims to be presented to the United States, it is unnecessary to decide this point raised by the demurrer.

██ It seems clear that the object of the statute is to prohibit the drawing of money from the treasury of the United States by false, fraudulent and fictitious claims. United States v. Bittinger, 24 Fed. Cas. page 1150, No. 14,599.

---

* 18 U.S.C.A. § 556.

It is within the province of Congress to enact legislation for the protection of moneys in the United States Treasury from fraudulent claims.

These indictments substantially charge the defendants with setting in motion the machinery which eventually resulted in the presentation of false claims to the Navy Department. As was said in the case of United States ex rel. Marcus v. Hess, 317 U.S. 537, at page 543, 63 S.Ct. 379, at page 384, 87 L.Ed. 443:

"The initial fraudulent action and every step thereafter taken, pressed ever to the ultimate goal—payment of government money to persons who had caused it to be defrauded."

The language of the statute is broad enough to reach any person who causes false, fraudulent, and fictitious claims to be presented to the United States, even if such fraudulent claims are actually presented through an intermediary.

As to the contention of defendant Welch that he has been improperly named in the indictment, this point of misnomer cannot be properly raised by a demurrer, but may be attacked only by a plea in abatement. Filiatreau et al. v. United States, 6 Cir., 14 F.2d 659.

However, in my opinion, even if raised by a proper pleading, it would be unavailing to this defendant since he is sufficiently described in the indictment.

The demurrers filed by the several defendants are overruled.