STATE of Missouri,
Plaintiff-Respondent,

v.

Seibert Ray MEDLEY,
Defendant-Appellant.

No. 40342.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 14, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

Application to Transfer Denied
Nov. 14, 1979.

---

Paul J. Passanante, Wolff, Frankel, McConnel & Passanante, Clayton, for defendant-appellant.

George A. Peach, Circuit Atty., David O. Fischer, Asst. Circuit Atty., St. Louis, John D. Ashcroft, Atty. Gen., Marjorie Wholey Haines, Richard Thurman, Michael P. Donegan, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant appeals from a jury conviction of the crimes of Robbery in the First Degree, § 560.135 RSMo.Supp.1975, and Armed Criminal Action, § 559.225 RSMo.1976. The Second Offender Act, § 556.280 RSMo. 1969, was invoked and the trial court sentenced defendant to twenty years imprisonment for the robbery conviction and three years for Armed Criminal Action.

Defendant's first point on appeal is that the trial court erred by sentencing him pursuant to the Second Offender Act. In order to invoke the Second Offender Act the prosecutor must have proved that the defendant had been convicted, imprisoned and subsequently discharged for a prior felony. Defendant maintains that the only evidence offered to prove the prior felony was the testimony of James Barnes, Deputy Clerk of the St. Louis Circuit Court of Criminal Causes. The deputy clerk testified that a prior judgment in that circuit court had been entered against defendant for the crimes of Burglary Second Degree and Larceny. This testimony was based solely on the contents of an original record of the St. Louis Circuit Court of Criminal Causes. Defendant argues that the deputy clerk's testimony was incompetent evidence

because the original record of the circuit court contained neither the signature of a judge, nor seal of a court in violation of § 490.130 RSMo.1969.[1]

It should first be pointed out that defendant is mistaken in alleging that the only evidence of his prior conviction and imprisonment was the deputy clerk's testimony. The record indicates that after the deputy clerk testified the prosecutor introduced a copy of a "Certified Transcript of Serial Record" as further proof of the defendant's prior conviction. This document was certified by the Supervisor of the Division of Classification and Assignment, Department of Corrections, State of Missouri, and was signed and attested to by Joseph P. Roddy, Clerk of the Circuit Court of the City of St. Louis and by Floyd McBride, Presiding Judge of the Circuit Court of the City of St. Louis. The copy of the serial record was fully attested to as required by § 490.130 RSMo.1969.

Defendant's objection to the admission of the deputy clerk's testimony is founded on an erroneous interpretation of the purpose and applicability of that statute. The state produced the original records of the St. Louis Circuit Court of Criminal Causes. These records were identified by the deputy clerk, their custodian, and served as the basis of his testimony. Defendant complains that the original records of the Circuit Court did not comply with § 490.130 RSMo.1969. This precise contention was considered long ago and found to be without merit in *Carp v. Queen Insurance Company*, 203 Mo. 295, 101 S.W. 78 (1907). In that case the Supreme Court of Missouri explained the statute was enacted to provide a convenient method of proving the contents of records by certified copies thereof. As the court stated:

It was not the purpose of this statute to exclude original instruments, which have been properly identified as such. * * * To hold otherwise would be to hold that an original instrument fully identified is not evidence, but a copy of it would be. We think this objection is untenable.[2] *Carp, supra,* 101 S.W. 89.

Defendant also contends that the elements of imprisonment and subsequent discharge, necessary to the application of the Second Offender Act, were not proved beyond a reasonable doubt. The entry of judgment and serial record both state defendant was convicted upon a plea of guilty to the crimes of Burglary and two counts of Larceny. The judgment states the sentence to be three years for the crime of Burglary Second Degree and three years for the Larceny crimes. These sentences were to be served consecutively for a total of six years. The serial record indicates the sentence to be six years, three and three consecutive. Each document reveals that the judgment was entered in the City of St. Louis and that the sentence was pronounced on May 21, 1957. The serial record indicates that defendant was subsequently discharged from the Missouri Department of Corrections on November 28, 1960. Defendant argues the serial record states "Computation of Sentence, November 28, 1960." Defendant asserts that use of the word "computation" renders his previous discharge indefinite. This argument apparently follows from a clerical error in preparing the trial transcript. By referring to the actual copy of the serial record, which was in evidence,

---

1. 490.130. Certified records of courts to be evidence

The records and judicial proceedings of any court of the United States, or of any state, attested by the clerk thereof, with the seal of the court annexed, if there be a seal, and certified by the judge, chief justice or presiding magistrate of the court to be attested in due form, shall have such faith and credit given to them in this state as they would have at the place whence the said records come. Copies from the record of proceedings of any court of record of this state, attested by the clerk there-of, with the seal of the court annexed, if there be a seal, or if there be no seal, with the private seal of the clerk, shall be received as evidence of the acts or proceedings of such court of record in any court of this state.

2. *Carp v. Queen Insurance Co.,* supra, concerned itself with § 1864 RSMo.1939 a predecessor to § 490.130 RSMo.1969. The logic of *Carp* as applied to § 490.130 RSMo.1969 was upheld in *State v. Washington,* 335 S.W.2d 23, 25 (Mo.1960).

it can be determined that the trial transcript should read "Commutation of Sentence, November 28, 1960." This evidence is such that it is clear beyond a reasonable doubt that the defendant had been previously convicted, imprisoned and discharged for the crimes of Burglary and Larceny exactly as the State alleged in attempting to invoke the Second Offender Act.

 Defendant's second contention is that the trial court erred in admitting evidence relating to his escape from the St. Louis City Municipal Jail. Defendant argues that the court erred because proof of his escape was neither clear nor convincing and because the escape was irrelevant to the offenses charged. We do not agree.

The evidence shows that on May 7, 1977, Henry Daniel Moore, a correctional officer, was on duty on the sixth floor of the St. Louis City Municipal Jail. At about 3:30 a. m. Moore discovered that a few rooms that were supposed to be occupied had been vacated. Moore immediately made a head count and ascertained that six inmates were missing. Defendant was one of the missing men. Defendant and his companions effected the escape by cutting the wire mesh screen and sawing a bar in a sixth floor window. The men climbed down the building, using the bar covered windows as a step ladder, to a point twenty feet above the ground. There the inmates jumped to the ground and scaled a fence. Defendant was arrested the following day in Granite City, Illinois. After being given his constitutional rights, defendant stated he needed to be taken to a hospital because he injured his ankle while escaping from the jail. This evidence conclusively shows that defendant escaped the St. Louis City Municipal Jail and his contention that the evidence on this point is not clear and convincing is without merit.

Concerning the use of evidence of the escape to prove defendant's guilt of the crimes of robbery and armed criminal action, it is settled law that flight is relevant circumstantial evidence that may be considered along with other evidence bearing on the commission of the crimes charged.

*State v. Castaldi,* 386 S.W.2d 392, 395 (Mo. 1965); *State v. Thompson,* 363 S.W.2d 711, 715 (Mo.1963). The underlying theory is that unexplained flight indicates a consciousness of guilt, *U. S. v. Gicinto,* 114 F.Supp. 204, 205 (W.D.Mo.1953), and a desire to avoid trial. It is true, as defense counsel points out in his brief, there could be a number of other reasons why defendant fled the jail. But, defense counsel had the right to refute the incriminating circumstances of the escape, *State v. Burns,* 322 S.W.2d 736, 742 (Mo.1959), and was free to persuade the jury that defendant escaped for reasons other than he was guilty and feared prosecution. *State v. Craft,* 344 Mo. 269, 126 S.W.2d 177, 180 (1939). Defendant, who did not take the stand, obviously failed to so persuade the jury. The fact that defendant fled the jail, and not the place where arrested, does not destroy the inference of guilt that arises from his unexplained flight. *State v. Rutledge,* 524 S.W.2d 449, 458 (Mo.App.1975). Nor is the evidence rendered inadmissible because defendant escaped thirteen weeks after his arrest. The amount of time between defendant's arrest and escape merely affects the weight of the evidence. *State v. Rutledge,* supra. Under the circumstances defendant's flight and the attendant circumstances were for the jury to consider.

 Prior to submitting the case to the jury a conference was held between the court and the parties concerning the jury instructions. Defendant proposed and the court rejected defendant's instructions A and B. However, the court accepted instruction number 10, MAI–CR 3.60, as submitted by defendant. Defendant argues that the court erred by refusing instructions A and B and by submitting instruction number 10 to the jury.

The trial court did not err by refusing the tendered instructions. Proposed instruction A read:

> If you do not find that the defendant, after the incident in question and while confined, broke out or left the Municipal Jail of the City of St. Louis for the purpose and with the intent to avoid trial for

the offense with which he is charged in this cause, then such breaking out or leaving is a circumstance which may not be taken into account or consideration by you in connection with all the other facts and circumstances in the case in determining the guilt or innocence of the charge placed against the defendant.

NOT IN MAI

SUBMITTED BY DEFENDANT.

Refused instruction B stated:

The intentional flight or concealment of a defendant immediately after the commission of a crime or after he is accused of a crime that has been committed, is not of course sufficient in itself to establish his guilt; but is a fact which, if proved, may be considered by the jury in the light of all other evidence in the case, in determining guilt or innocence. Whether or not evidence of flight or concealment shows a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury.

NOT IN MAI

SUBMITTED BY DEFENDANT

Both instructions A and B are prohibited by MAI–CR 5.40 which states:

No so-called flight instruction or counter-flight instruction may be given. This rule applies both to (1) instructions permitting the jury to consider or draw inferences from a defendant's flight in determining his guilt or innocence, and (2) those directing the jury's attention to any explanation or excuse for what appears to have been flight.

Evidence of a defendant's flight and any explanation or excuse therefor is admissible. In addition counsel may draw the jury's attention to the evidence and argue permissible inferences or lack of them to the jury.

Instruction A is a counter-flight instruction expressly forbidden by the first sentence of MAI–CR 5.40. Instruction B attempts to school the jury as to the inferences which may be drawn from the defendant's flight. Thus instruction B is prohibited by clause (1) of MAI–CR 5.40. Defendant's trial be-

gan on March 20, 1978, well after the date MAI–CR 5.40 became effective, March 1, 1975. Therefore, the trial court was required to follow that rule and committed no error in refusing the proposed flight instructions.

Defendant's allegation that the trial court erred in submitting instruction number 10 to the jury is also without merit. That instruction was tendered by defendant. Therefore defendant is precluded from complaining of the effect of instruction number 10 by Rule 26.06, which states: "A defendant in any criminal case shall have no just cause for complaint because: (1) error was committed during the trial at his instance or in his favor, * * *" *State v. Nelson,* 459 S.W.2d 327, 334 (Mo. 1970).

 Because of their similarity defendant's fourth and fifth allegations of error will be considered together. In his fourth point on appeal defendant alleges that the trial court erred in submitting instruction number 5. This instruction informed the jury of the law applicable to the First Degree Robbery charge. Instruction number 5 read:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on January 31, 1977, in the City of St. Louis, State of Missouri, Lillian Cermak had possession of a quantity of drugs and money, and

Second, that at the time and place the defendant took the property from Lillian Cermak against her will by causing her to fear immediate injury to her person, and

Third, that the defendant took the property with the intent to permanently deprive Lillian Cermak of the property and to convert it or any part of it to the use of the defendant.

Then you will find the defendant guilty under Count I of robbery in the first degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you

must find the defendant not guilty of that offense.

Defendant contends that the evidence did not support submission of the above instruction because the State failed to prove two essential elements of the offense of robbery in this case: (1) that Lillian Cermak had possession of a quantity of drugs and money and (2) that defendant took the drugs and money from Lillian Cermak against her will by causing her to fear immediate injury to her person. Defendant's fifth contention is that the trial court erred in overruling his motion for acquittal at the close of the State's evidence because the State proved neither that the property was taken in the presence of Lillian Cermak nor that it was taken by putting her in fear of injury to her person.

The evidence shows that Lillian Cermak was part owner of Cermak's Pharmacy, Inc. Mrs. Cermak was behind a counter of the store when the defendant entered. Defendant flourishing a gun, announced he was going to rob the store. All the occupants of the store, including Lillian Cermak, were forced to lie face down on the floor in an area behind the prescription counter. Defendant then ordered one man, Robert Schaffer, to take bottles of drugs from a shelf marked Darvon, Librium, Valium and Thyroid and place them in defendant's duffle bag. Defendant also took forty dollars from a bag lying in an open drawer.

Defendant's fourth and fifth points on appeal are without merit. Because the defendant tests the sufficiency of the evidence we must view it in the light most favorable to the State. *State v. McIntosh,* 559 S.W.2d 606, 607 (Mo.App.1977). First, there was more than enough evidence from which the jury could conclude that defendant took the drugs and money in the presence of Lillian Cermak. Suffice it to say that witnesses Cermak, Schaffer, Peifer and Howell testified that the property was taken from the area behind the prescription counter at the back of the store. Cermak testified she had been ordered by defendant into this area. Her presence behind the prescription counter was confirmed by witnesses Schaffer, Peifer and Howell. Second, there is no merit to defendant's contention that the State failed to prove Lillian Cermak was put in fear of injury to her person. The evidence shows Lillian Cermak was behind a counter of the store when defendant flourishing a gun announced "Hold up" or "Stick up." The plain implication of defendant's use of the gun was that Lillian Cermak was put in fear of injury to her person. *State v. Hawkins,* 418 S.W.2d 921, 926 (Mo. banc 1967). Defendant contends that Cermak was not afraid because when he demanded the narcotics she responded that she was not a pharmacist and did not know where the narcotics were kept. We do not agree. We conclude that the jury could reasonably interpret the exchange between defendant and Cermak as reflecting that Cermak did not actually know where the narcotics were kept. This interpretation is supported by Cermak's testimony at trial that although she knew there were narcotics in the pharmacy, she did not know their exact location. Finally, the evidence sufficiently established that Lillian Cermak had possession of the property taken by defendant. For the purpose of the first degree robbery statute, § 560.120 RSMo.1969, possession exists when the victim has control of the property in such a manner or to the extent that violence or putting in fear of injury was the means used to take the property from the victim. *State v. Hayes,* 518 S.W.2d 40, 45 (Mo.1975). The above evidence established that defendant put Lillian Cermak in fear of injury in order to seize a quantity of drugs and money from Cermak's Pharmacy. Viewing the evidence in the light most favorable to the State we conclude Lillian Cermak had possession of the property taken by defendant.

We have considered and disposed of all of defendant's contentions and conclude the judgment should be affirmed.

SNYDER, P. J., and SMITH, J., concur.